STERLING WHEELBARROW CO. *v.* GREAT LAKES
FOUNDRY CO.

1. SALES—DELAY IN DELIVERY—REASONABLE TIME.

In an action to recover the purchase price of certain flasks which plaintiff guaranteed to furnish within four weeks after it received sample bars from defendant, wherein defendant made claim for damages for delay, *held*, that defendant was entitled to delivery within a reasonable time after the sample bars furnished by plaintiff were approved by defendant notwithstanding the time limit fixed in the contract was waived.

2. SAME — REASONABLE TIME TO BE DETERMINED FROM CIRCUMSTANCES—LIABILITY FOR DELAY.

The necessities of defendant, known to plaintiff, the time within which plaintiff agreed to deliver, and the conditions then existing as to factory work must all be considered in determining what was a reasonable time for delivery, and if there was unreasonable delay, chargeable to plaintiff alone, defendant would be entitled to recover the damages it sustained thereby.

3. SAME—DUTY OF SELLER TO NOTIFY BUYER OF PROBABLE DELAY.

If conditions at plaintiff's factory were such that it could not make delivery within a reasonable time, it was its duty to so notify defendant, where it knew that defendant was liable to heavy loss by delay.

4. SAME — CONSENT TO CHANGE — WAIVER OF RIGHT TO CLAIM DAMAGES FOR DELAY—TRIAL.

Where it appears that plaintiff suggested changes in the construction of the bars, defendant was entitled to an instruction that if it consented to such changes on plaintiff's assurance that they would hasten production, defendant did not thereby waive its right to claim damages for delay.

5. SAME—EVIDENCE—TRIAL—INSTRUCTIONS.

Where plaintiff contracted to manufacture certain bars in conformity with samples furnished by defendant, it was

no concern of plaintiff whether the samples furnished were suitable for the purpose for which they were to be used or not, and therefore the admission of testimony to the effect that they were not suitable, which was emphasized in an instruction to the jury, was reversible error.

Error to St. Clair; Tappan (Harvey), J. Submitted October 19, 1923. (Docket No. 30.) Decided December 19, 1923.

Assumpsit by the Sterling Wheelbarrow Company against the Great Lakes Foundry Company for the purchase price of certain equipment. Judgment for plaintiff. Defendant brings error. Reversed.

*Lincoln Avery* and *J. F. Wilson*, for appellant.

*Walsh & Walsh*, for appellee.

SHARPE, J. On February 20, 1919, defendant gave plaintiff a written order for 850 steel flasks with bars and pins at a price agreed upon, which was accepted by plaintiff on March 3d. The order contained the following provision:

"Shipment promised 3 to 4 weeks and guaranteed not to exceed 4 weeks—sample bars to be furnished you by us in one week."

In this action to recover the purchase price, plaintiff had verdict for $13,722.39. Defendant's motion for a new trial was denied. It now reviews the judgment entered on the verdict and the denial of such motion by writ of error. The defense was based on the claim that the flasks and equipment furnished it under the order were in part defective and that defendant suffered much loss by reason of the delay in delivery. The assignments relate to the admission of evidence and the charge of the court.

The "flasks" ordered were boxlike devices used in

molding iron castings.   Their use is thus described in plaintiff's brief:

"Each flask consists of an upper part (approximately the upper half of the box) called the cope and a lower part called the drag.   In use they are put over a 'pattern' mounted on the plate of a sand jarring or ramming machine, sand is shoveled through the open top and jarred down around the patterns, then the pattern is dropped out leaving its impress in the sand.   The pattern is of two parts, one used in the cope and the other in the drag.   Thus when a cope and a drag have been taken off the respective machines and placed together, a hollow space is left in the center into which the metal is poured to make the casting. Flasks are sometimes made simply as empty shells, others have bars across them to hold the sand in place. There must be a space (called 'clearance') between the edges of these bars and the casting, filled with sand to prevent the bars touching the molten metal."

The witnesses and counsel refer to the three sizes of flasks specified in the order by number.   300 of No. 1678, 300 of No. 1314, and 250 of No. 1536 were to be supplied.   Defendant's purpose in purchasing these flasks was to enable it to furnish certain castings to Henry Ford & Son, from whom it had received a large order.   Plaintiff had an agency in Detroit, conducted by J. W. Dopp & Company, to whom defendant telephoned concerning such flasks.   Its representative, Mr. Patterson, visited defendant and secured the order to plaintiff.   Mr. Patterson was advised of the purpose of defendant in securing the flasks, and the importance of prompt delivery was impressed on him.   The sample bars were not furnished within one week, nor did plaintiff make delivery within four weeks after they were furnished.   The testimony and correspondence indicate much dispute as to the cause of the delay.   It appears, however, that plaintiff's president, Mr. Smith, visited defendant's plant in May, and an arrangement was then made whereby

plaintiff was to design new sample bars, containing a less number of the connecting strips of metal.  Defendant claims it consented to such change on the assurance of Mr. Smith that the cost of such bars would be lessened and production hastened by the change.   There is again much dispute over the cause of the delay following this arrangement.   In its correspondence and personal interviews with plaintiff's officials and agents, defendant complains bitterly of the delay, while plaintiff insists it was, in part at least, due to the furnishing of samples to defendant and securing its approval of them.   In a letter written on May 8th, acknowledging receipt of memorandum of shipment of three flasks returned to it, plaintiff said:

"We will immediately make up two complete sets of sample flasks.   One set will contain the same number of bars as your present flasks now have.   These will be properly installed to give plenty of clearance for the mold.   The other set will have a less number of bars.   We will design these flasks with as few bars as we think will work out satisfactorily.

"We will get these two complete sets of flasks off to you at the earliest possible moment, and we would suggest that when they arrive and your patterns are received, that you notify us accordingly.   The writer will endeavor to again get on the job and determine immediately which is the most desirable bar construction.

"As explained to you, we have these flasks all finished, with exceptions of bars.   We will, therefore, be in position to start immediate delivery, upon receipt of bar O. K.   You can rest assured that we are going to keep right on this job, and will give you the service you require.   We believe that the flask with less bars will prove satisfactory, and if it does, it will, of course, be the cheapest flask."

To this, defendant replied on the 12th:

"We acknowledge receipt of your letter of the 8th instant regarding steel flasks and in reply ask that you do everything possible to avoid any further delay

in completing these flasks as the time of starting these jobs is now long past due and our customers will press us for the castings."

On the 13th, plaintiff telegraphed:

"Sample flasks have been received.    Will make up two sets at once."

Mr. Dickson, plaintiff's salesman, was at defendant's plant on May 28th.    He testified:

"1536 was completed while I was there and the 1314 was practically right one section, very little if any, changes necessary."

On June 11th, three sample flasks were shipped to defendant.    It acknowledged receipt of them on the 18th, saying one of them was being returned by express.    Mr. Theisen, defendant's vice-president and secretary, testified that these samples—

"were not in accordance with the bar pattern, nor with the O. K.'d sample that had been sent back to them.    We had to cut out the bars with a welding torch."

Several letters and telegrams followed.    On June 23d, plaintiff telegraphed:

"According to our superintendent flasks made according to sample.    We regret delay.    Mr. Dickson will see you tomorrow.    Will do all possible to get correct flasks to you promptly."

Almost daily thereafter, defendant sent a message urging delivery at once.    On the 27th, plaintiff wired: "Can express 75 flasks of 1536 in week to 10 days." On the 30th, Mr. Dickson, plaintiff's representative, wired his company:

"Imperative that 75 flasks be expressed Great Lakes Foundry this week, Thursday, balance to be rushed. Both other samples returned today."

Plaintiff wired defendant on the 30th: "Will express 75 flasks Thursday."    Only six were sent.    On

July 8th, plaintiff writes lengthy letter to defendant, insisting that the delays were due in part to the getting of samples from defendant.    It was further said:

"You criticize the writer quite severely, as regards delivery, and we only wish to say that conditions have somewhat changed since the writer's visit to you. One important change has been that we have been obliged to discontinue the night force, due to the fact that we cannot get efficient service from them during the summer months.    This cuts down our welding capacity just 50 per cent., and it is the welding of these flask bars which takes the time.    Also there are more bars in flasks than the writer thought would be necessary when he was at your plant."

Mr. Smith testified that the design numbered 1536 was "O. K.'d for production" on June 18th, No. 1314 on July 2d, and 1678 on August 2d.    Defendant's officers fix these dates earlier.    Of those numbered 1536, plaintiff shipped 172 in July, 50 in August, and 24 in September; of the number 1314, 103 in July, 100 in August, and 93 in September; and of the number 1678, 200 in August and 95 in September.

1. It is apparent that the provision in the order that the flasks should be delivered within four weeks after plaintiff received the sample bars had been abandoned and the right to rely thereon waived.    But defendant was entitled to delivery within a reasonable time after the sample bars designed by plaintiff were approved by it.    The necessities of the defendant, known to plaintiff, the time within which plaintiff agreed it would deliver, and the conditions then existing as to factory work, must all be considered in determining what was a reasonable time for such delivery.    If there was unreasonable delay, chargeable to plaintiff alone, defendant would have been entitled to the damages it sustained caused thereby.    Mr. Smith testified:

"After we got the O. K.'d sample we gave them the

very best service possible in view of conditions at our plant."

If these conditions were such that delivery could not be had within a reasonable time, defendant should have been apprised thereof.    It stood to lose on its Ford contract, and this fact was known to plaintiff.

The court charged the jury that defendant's failure "to furnish the sample bars within the time limit of one week specified" was a waiver of "the provision requiring plaintiff to ship the flasks within four weeks guaranteed in the contract."    As to the delay following the change made in the design, heretofore referred to, the court charged:

"The Sterling Company cannot be held responsible for any delay that was caused by unsuitable or defective bar patterns furnished by Mr. Snow to the Sterling Company, if any, and if you find from the evidence that Mr. Snow consented to change his original model by removing bars from each of the models, then the Sterling Company cannot be held responsible because of delay resulting therefrom. You are to determine from the proofs whether this change was agreed upon by Mr. Baker and Mr. Snow."

The defendant preferred the following request:

"If you find that the delay in making and delivery of the flasks was due to alterations or changes in the construction of the flask bars or chucks suggested by plaintiff, and that such changes were agreed or consented to by defendant's officers on the assurance of plaintiff, or its representatives, that the flasks could be more readily made after such changes and would be equally fit for the use to be made of them by defendant, and such assurances were relied on by defendant in permitting and assenting to such changes, then defendants by such consent would not waive their right to claim damages for delay in making and delivery of the flasks."

This was not given.    We feel constrained to hold that its refusal constituted reversible error.    We are

225—Mich.—26.

impressed after a careful reading of the charge that the jury gathered from the instruction given that defendant could not complain of delay following the changes made in the design by plaintiff, if it consented thereto. If plaintiff offered to design sample bars and assured defendant that its consent thereto would hasten production, defendant's consent could not be assigned as an excuse for unreasonable delay in production thereafter. That there was such delay, the last shipment of the flasks not having been made until October 12th, seems apparent. While under plaintiff's proofs the time limit of four weeks was waived, there was no waiver of delivery within a reasonable time after the designs were finally approved.

2. Errors are assigned on the admission of evidence. One of plaintiff's witnesses was asked:

"*Q.* I want to ask you whether you ever saw any such bar construction in all your experience?"

And further:

"Will you state whether a construction of bars such as were in these tin models is a right and proper construction?"

In his answers he expressed the opinion that the construction was not proper and stated what the general practice was in designing such models. The effect of this kind of testimony was emphasized in an instruction to the jury that—

"The Sterling Company cannot be held responsible for any delay that was caused by unsuitable or defective bar patterns furnished by Mr. Snow."

Whether the samples were or were not suitable was no concern of plaintiff. It had contracted to manufacture the bars in conformity with the samples furnished by the defendant. If it did so, it fully performed, and defendant could make no claim that those delivered were not suitable for the purpose for

which they were to be used.   We think the admission of this testimony over defendant's objection and the instruction given constituted reversible error.

The judgment is reversed, with costs to appellant, and a new trial ordered.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, BIRD, MOORE, and STEERE, JJ., concurred.